FILED _____ ENTERED
LODGED _____ RECEIVED

MAY 2 7 2009

AT GREENBELT
CLERK U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY _____ DEPUTY

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION

RAMONE STEPHON JONES          *
                              *     Civil Case No. AW-08-2210
        v.                    *     Criminal Case No. AW-03-0321
                              *
                              *
UNITED STATES OF AMERICA      ******

## MEMORANDUM OPINION

### I

Before the Court is a Motion/Petition by the Petitioner/Defendant, Ramone Stephon Jones,

for relief pursuant to 18 U.S.C. § 2255.  The Government has opposed the Petition through its

response, and Respondent has filed a reply or traverse to the Government's opposition. The matter

is now ripe for resolution.

### II

Some brief background information is in order.  Petitioner (Ramone Stephon Jones),  Deone

Antonio Melvin, Stephon Mason, and Adrian Alexander along with 11 others were charged in a 15-

count federal indictment in Maryland handed down on July 9, 2003.  Although the charges varied

with respect to each defendant, the essential charges ranged from conspiracy to distribute and possess

with the intent to distribute cocaine and cocaine base,  money laundering,  possession of a firearm by

a convicted felon and possession of firearm in furtherance of a drug trafficking crime.  On November

13, 2003, Petitioner, Melvin, Mason and Alexander were charged along with 12 others in a 15-count

superseding indictment again alleging drug trafficking,  money laundering and/or possession of

firearms.  Petitioner, Melvin, Mason and Alexander went to trial.  A number of co-conspirators

testified during the trial.  The record is quite voluminous but the Court will briefly summarize the operative facts.

Commencing in 1997, Shahid Omar ran a drug distribution operation in Maryland.  Omar obtained his cocaine in New York from Franscisco Despiau who had several different sources of supply.  Omar made regular trips to New York, often accompanied by Mason, and traveled in vehicles containing hidden compartments used for storing drugs.  Once the cocaine arrived in Maryland, Omar sold it to customers, including Mason who was also a customer.  Mason in return had customers, including a customer somewhere in 1999 by the name of Aaron Harrod.  On September 4, 1999, Harrod met Omar and Mason to consummate a three kilogram transaction. After Harrod approached the vehicle and  handed Mason $66,000, Omar shot Harrod about 8 or 9 times.  Harrod survived and was later bribed for $25,000 by Mason not to testify against Omar. Although Harrod signed an affidavit that Omar did not shoot him, nevertheless at Omar's trial, Harrod testified truthfully.  While Omar was incarcerated, Mason took the helm and began a relationship with Despiau where he traveled on several occasions to New York to make numerous drug purchases, paying Omar a fee for having given Mason the (Despiau) source.  In April of 2000, Mason was stopped and his blue Ford Windstar was searched wherein weapons were seized, including, the gun which Omar had used to shoot Harrod.  Mason was arrested and incarcerated. Melvin and Petitioner then took the leadership of the organization and traveled to New York to purchase drugs and numerous vehicles with hidden compartments from Despiau.  Melvin and Petitioner [occasionally accompanied by others who rode with them] made purchases of approximately 10 kilograms of cocaine each week.  Most of the vehicles equipped with hidden

2

compartments were placed in the names of others different from the true users and drivers. Melvin and Petitioner were also assisted from time to time by drivers who picked up and delivered drug money to Despiau. Melvin employed Alexander as driver and Petitioner used Bennie Wilder.

While incarcerated, Mason sent letters insisting that Melvin and Petitioner pay him a fee each time they obtained cocaine from Despiau. In summer of 2002, Mason was released from incarceration and Mason, Melvin and Petitioner continued to purchase cocaine from Despiau. Between summer of 2002 and spring of 2003, Mason, Melvin and Petitioner distributed at least 80 kilograms of cocaine. Mason distributed both cocaine and crack which he prepared in a microwave. By the spring and summer of 2003, Mason and Petitioner had incurred significant debt on the cocaine purchases. As a result Despiau cut off the supply which frustrated Petitioner, Melvin, Mason and Alexander. During the summer of 2003 the investigation continued with Title III interceptions over targeted and related telephones. Law enforcement officials overheard numerous conversations regarding drug purchases, distributions, the problems with the indebtedness to Despiau, and the search for potential new sources. The wiretaps also enabled law enforcement officials to learn about the titling of vehicles in names of others, about which vehicles had hidden compartments, about ways to hide the cocaine brought back from New York, and about where and in which residences they should store and hide weapons.

With reference to the possession of firearms by Petitioner during the course of the conspiracy, Despiau testified as to seeing a firearm inside a drug trap in a vehicle driven by Petitioner. There were several conversations involving firearms by Petitioner which were overheard by law enforcement officials. Petitioner was overheard discussing with a co-defendant the need to relocate firearms at different locations. Another co-defendant, Bennie Wilder, was overheard mentioning to Mason that

he was going to give a gun to Petitioner.  In still another overheard conversation, Mason indicated

that Petitioner had access to several firearms and would provide one to Mason.  Moreover, during

other wiretap calls, petitioner and Melvin discussed placing guns at 4310 Lavender Lane [which was

the home of Dana Dark] out of fear that law enforcement officials might search their apartment.

The investigation concluded on July 31, 2003 with the execution of multiple search warrants.

The law enforcement officers found a Glock .45 caliber pistol in Melvin's bedroom at the apartment

Melvin shared with Petitioner in Upper Marlboro, Maryland.  At the Lavender Land address, agents

recovered a Ruger 9 mm pistol, a Heckler & Koch .40 caliber pistol, an Intratec 9 mm pistol, and a

Masterpiece Arms .45 caliber pistol.    Law enforcement also agents recovered at Mason's home in

Fort Washington, Maryland a RG .38 caliber revolver with an obliterated serial number.  In addition,

agents found in a hidden compartment within a blue Ford Explorer [which was parked at Masons'

home in Fort Washington, Maryland] approximately 125 grams of cocaine and a Heckler & Koch .45

caliber pistol.  The blue Ford Explorer had been identified as one of several vehicles utilized during

the course of the alleged conspiracy.

On July 21st,  2004, a jury convicted Petitioner of count (3) three of the superseding

indictment, namely money laundering conspiracy but deadlocking on all remaining counts relating to

Petitioner.  Following a retrial in June of 2005 Petitioner was convicted by a second jury of count (1)

conspiracy to distribute and to possess with intent to distribute five kilograms or more of cocaine and

fifty grams or more of cocaine base (crack); count (4)  money laundering; count (7)  possessing  a

firearm in furtherance of a drug-trafficking crime; and count (9) possession of a firearm after having

been convicted of a felony.

On September 26, 2005, the Court sentenced Petitioner to 300 months imprisonment,

concurrently for counts one, three, four and nine; and 60 months (5 years) consecutive [to those

4

counts] on count seven.   A ten year concurrent period of supervised release is to follow the incarceration.   Petitioner appealed his verdict and judgment to the United States Court of Appeals for the Fourth Circuit where his sentenced was affirmed on July 13, 2007.   (*See* 2007 WL 2046735 (C.A.4 (Md)).   This present Motion/Petition to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 (paper #601-1) was timely filed on August 25, 2008  and the Motion is now ripe for resolution.

**III**

From a review of both the Motion to Vacate as well as Petitioner's Memorandum in support of his Motion, the Motion presents (4) four issues or claims which Petitioner argues entitle him to relief under  18 U.S.C. § 2255.   **First**, Petitioner claims that he is a victim of ineffective assistance of trial counsel based upon the failure of counsel to subpoena and cross examine a key witness for the defense (namely officer Harold Black) who, Petitioner says, had a vendetta against Petitioner because of a previous relationship between officer Black and Petitioner's sister.   **Second**, Petitioner argues that the jury failed to resolve and identify which object of the conspiracy (the distribution and possession with intent to distribute cocaine and crack) Petitioner committed; and alternatively, Petitioner insists that he should have been sentenced on the basis of the quantity of powder cocaine involved in the conspiracy and not on the basis of the quantity of crack cocaine.   **Third**, Petitioner claims that he was the victim of ineffective assistance of trial counsel based upon the failure of counsel to object to inaccurate [mis]information contained in the pre-sentence report (namely, the amount of drugs set forth in the pre-sentence report exceeded the amount of drugs found by the jury in accordance to their verdict).   **Finally**, Petitioner claims that he was the victim of ineffective assistance of appellate counsel based upon appellate counsel's failure to argue on appeal the failure

5

of the Government to have proven a specific nexus between Petitioner's possession of a firearm and [in furtherance of] drug trafficking under 18 U.S.C.§ 924 © .

With respect to the claim by Petitioner that his counsel was ineffective, the Court reviews his allegations under the well established standard set forth in Strickland v. Washington, 466 U.S. 668, 687 (1984), under which a claimant must establish the two prong standard of deficient performance and prejudice.  In other words, in order to succeed on his claim of ineffective assistance of counsel, Petitioner must show that his counsel's performance was deficient in that counsel made errors so serious that he ceased to function as a counsel within the meaning of the Sixth Amendment, and that the alleged deficient performance prejudiced the defense.  Id.

## IV

Petitioner's first claim is that his trial counsel was constitutionally  ineffective by failing  to subpoena and cross examine officer Harold Black who, Petitioner claims had a vendetta against Petitioner because of a previous relationship between officer Black and Petitioner's sister.  Officer Black was listed as a witness and called by the Government for trial.  As such there was no need to subpoena him.  In addition, Officer Black testified at the trial and was throughly cross-examined by Petitioner's counsel with respect to Officer Black's prior romantic relationship with Petitioner's sister. Moreover, as part of Petitioner's defense, his counsel called Petitioner's sister to the stand and she testified that she and officer Black dated and that when the relationship ended, the sister testified that Officer Black said that he was going to get her brother (Petitioner).  During closing argument, Petitioner's trial counsel questioned the credibility and bias of Officer Black by specifically pointing out to the jury the prior romantic relationship between Officer Black and Petitioner's sister, the termination of that relationship and the claim by the sister that Officer Black promised to get

6

Petitioner.  The Jury heard the testimony about the relationship, considered that testimony in the context of all the evidence, presumably followed the Court's instructions with respect to credibility of witnesses and reached a decision to convict Petitioner.   With reference to claim one, the Court does not believe on this record that Petitioner has made any showing that counsel's performance was legally deficient nor is there any evidence of prejudice pursuant to the *Strickland* standard.

## V

Next, Petitioner posits that the jury failed to resolve and identify which object of the conspiracy (the distribution and possession with intent to distribute cocaine and crack) Petitioner committed; and alternatively, Petitioner insists that he should have been sentenced on the basis of the quantity of powder cocaine involved in the conspiracy and not on the basis of the quantity of crack cocaine.  Here, Petitioner argues that the indictment for distribution or possession with intent to distribute set forth two separate controlled substances in a multiple object conspiracy.  Petitioner claims that the jury was not legally able to distinguish between what he labels as a powder cocaine conspiracy and a cocaine base conspiracy.

This assertion of two independent conspiratorial objectives and the alleged error by the Court in not giving a multiple conspiracy instruction was presented as an issue and specifically argued before the Court of Appeals for the Fourth Circuit, and rejected.  *See, United States v. Melvin,*  2007 WL 2046735 *16 (C.A.4 (Md)) where the Court indicated:

> In this case, the government's evidence involved the same individuals, Jones, Mason, Alexander, Omar, Despiau, Elzey, and Wilder, working with each other to conduct the same activity, the distribution of cocaine and crack, in the same location throughout the District of Maryland, and during the time frame alleged in the indictment. As a result, the evidence amply supports the jury's conclusion that Jones, Mason, and Alexander were part of the single conspiracy charged in

7

the indictment.

Preliminarily, the Court finds that it properly instructed the jury.  In accordance with the instructions given, the jury determined the type and quantity of controlled substances involved in this one conspiracy–specifically finding that Petitioner was a member of a conspiracy involving at lease five kilograms of cocaine and 50 grams of crack.  Moreover, the Court cannot find on this record any suggestion of jury confusion.   Accordingly, the Court finds no merit in this second claim.


## VI

As a third claim, Petitioner claims, that his trial counsel was constitutionally ineffective by failing  to object to inaccurate misinformation contained in the pre-sentence report (namely, the amount of drugs set forth in the pre-sentence report exceeded the amount of drugs found by the jury in accordance to their verdict).  Petitioner, in effect,  asserts that because the jury [in convicting Petitioner] determined that Petitioner was responsible for in excess of five kilograms of cocaine and in excess of 50 grams of crack, [which would have placed Petitioner at a base level of 32] the (presentence report) PSR erroneously determined that Petitioner was responsible for in excess of 150 kilograms of cocaine and which then erroneously placed Petitioner at a base offense level of 38. The Court adopted the later determination of a base offense level of 38.  Petitioner believes that it was ineffective of assistance for counsel not to have objected to this inaccurate information.

What Petitioner does not mention is the obligation of the Court to calculate the sentencing range under the Guidelines after making the appropriate findings of fact and consider the range in conjunction with other *relevant factors*.  Relevant conduct under the Sentencing Guidelines (U.S.S.G. § 1B1.3(a)(2) (2004)) includes all of the conduct associated with the offense which is attributable to Petitioner.  As set forth in the detailed  factual background, the record was voluminous and involved

a rather large drug distribution ring with more than 15 co-conspirators.   The Government presented a mound of evidence which clearly established that the distribution and the possession with intent to distribute  cocaine and crack was well in excess of 150 kilograms of cocaine and 50 grams of crack. Because the PSR with respect to the amounts attributable to Petitioner was, indeed, accurate, it follows that Petitioner's counsel was not ineffective, under *Strickland*, in failing to object to inaccurate information.   Accordingly, Petitioner's ineffective assistance of counsel pursuant to claim three must fail.

## VII

Finally, as a fourth claim, Petitioner claims that his appellate counsel was constitutionally ineffective  based upon appellate counsel's failure to argue on appeal the failure of the Government to have proven a specific nexus between Petitioner's possession of  a firearm and [in furtherance of] drug trafficking under 18 U.S.C.§ 924©.   Again, the Court evaluates this claim under the *Strickland* standard.  Appellate counsel raised good arguments on Petitioner's behalf before the Fourth Circuit. Among the claims on appeal, Petitioner's appellate counsel challenged the denial of the motion to sever, joined in the challenge to the admission of various firearms into evidence; challenged the failure to give a multiple conspiracy instruction;  challenged his 300 month sentence as being violative of *United States v Booker*, 543 U.S. 220 (2005); and challenged the failure of the Government to refile [in the second trial] its notice of enhanced sentencing which triggered the twenty year mandatory-minimum sentence  under § 851 (b) (1) (A).

It is not necessary that counsel present on appeal every conceivable legal issue one might raise. Interestingly, the claim here with reference to the Government's  failure to have proven a nexus between possession of  a firearm and [in furtherance of] drug trafficking under 18 U.S.C.§ 924© while not presented on appeal specifically as it related to Petitioner was, nevertheless, an issue

similarly  presented by Melvin in his appeal.     In rejecting the claim by Melvin but mentioning

Petitioner,  the Fourth Circuit  indicated:

> In this case, there was more than enough evidence presented at trial for the jury to
> reasonably find that Melvin aided and abetted Jones' (*Petitioner herein*) possession
> of the firearms found at the Lavender Lane location and that those firearms were
> used during and in relation to the conspiracy  to distribute cocaine.

*Melvin,*  2007 WL 2046735 at *15.

Careful review of the overall record may well have convinced appellate counsel of the likely-

hood of a similar holding by the Fourth Circuit to reject such a claim if presented by Petitioner.  As

set forth above in the factual background, Despiau testified as to seeing a firearm inside a drug trap

in a vehicle driven by Petitioner.   Petitioner was overheard by law enforcement officials discussing

with a co-defendant the need to relocate firearms at different locations. Another co-defendant, Bennie

Wilder, was overheard mentioning to Mason that he was going to give a gun to Petitioner.  In still

another overheard conversation, Mason indicated that Petitioner had access to several firearms and

would provide one to Mason.  Finally, during other wiretap calls and also as referenced by the Fourth

Circuit in its opinion, petitioner and Melvin discussed placing guns at 4310 Lavender Lane [which

was the home of Dana Dark] out of fear that law enforcement officials might search their apartment.

Essentially, the Court agrees with the Government that there is a fairly convincing record

replete with evidence of Petitioner having access to and/or being in at least constructive possession

of firearms, and that these firearms furthered the drug trafficking enterprise.  It follows, therefore that

the Court cannot on this record find that it appellate counsel was constitutionally ineffective under

the instructions of *Strickland* and its progeny of cases.

## VIII

In sum, the Court has reviewed the current pleadings and the entire files relative to the present

motion as well as the underlying criminal case.  The Court finds that Petitioner has not demonstrated

a legal and cognizable basis for relief.  Accordingly, the Petitioner's motion pursuant to § 2255 is

DENIED.  A separate Order will be issued.

Date: May 27, 2009

                                        Alexander Williams, Jr.
                                        United States District Judge